IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF | ) | CASE NO.:    1:05 CV 2158 |
| ADMINISTRATIVE CLAIMANTS, on | ) | |
| Behalf of LTV Steel Company, Inc., | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM H. BRICKER, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on several Motions to Dismiss.  In particular, currently

pending before the Court are Motions to Dismiss filed by Defendants William Jeffrey Bricker

(ECF # 46), John D. Turner (ECF # 47), George Henning (ECF # 49), Dennis Babcock (ECF #

50), Eric Evans (ECF # 51), James Baske (ECF # 52), Glen J. Moran (ECF # 58), Clifford

Brown (ECF # 59), and Thomas L. Garrett (ECF # 61).  Also pending before the Court is an

Omnibus Motion to Dismiss the First Amended Complaint filed by Dennis Babcock, James

Baske, William Jeffrey Bricker, Clifford Brown, Eric Evans, Thomas L. Garrett, George

Henning, Glen J. Moran, and John D. Turner.  (ECF # 53.)  This Court held a hearing on the

pending Motions, during which counsel for Plaintiff and Defendants presented oral argument.

(ECF # 87.)  Subsequent to the hearing, with leave of Court, the parties filed Post-Hearing

Supplemental Briefs as to the Motions to Dismiss.  (ECF # 91, ECF # 92.)  Each of the Motions

has been briefed fully, and they now ripe for consideration.

# I. BACKGROUND

On April 2, 2009, Plaintiff, the Official Committee of Administrative Claimants (hereinafter the "ACC"), filed an eighty-two page Amended Complaint bringing this action derivatively on behalf of LTV Steel Company, Inc. and the LTV Steel bankruptcy estate for the recovery of damages to LTV Steel and LTV Steel's bankruptcy estate.  (ECF # 31 at 1.)  The Amended Complaint summarizes this action as follows:

> This lawsuit arises out of the startling collapse of LTV Steel's chapter 11 bankruptcy case in the Fall of 2001.  In violation of their fiduciary duties owed to LTV Steel under both the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and applicable corporate law, the Defendants caused or allowed LTV Steel to incur, during the chapter 11 bankruptcy case, substantial post-bankruptcy debts that the Defendants knew or should have known LTV Steel could not pay.  This, and the other misconduct alleged herein, proximately caused damages to LTV Steel in the sum of approximately $160 Million.  Upon information and belief, to this day LTV Steel is the largest failed industrial chapter 11 bankruptcy case in American history.

> The Administrative Committee has investigated the circumstances regarding the collapse of LTV Steel after it filed for chapter 11 bankruptcy protection.  LTV Steel filed its chapter 11 petition on December 29, 2000.  By no later than the first week of September, 2001 the Defendants knew that LTV Steel was experiencing a severe liquidity crisis and would run out of cash within three months.  Therefore, from at least the first week of September, 2001, the Defendants knew or should have known that LTV Steel was incurring substantial debts that it could not pay.

> LTV Steel's severe liquidity crisis, however, was not disclosed to either the Bankruptcy Court or the public.  Public pronouncements by Defendant William H. Bricker,  LTV Steel's CEO, implied that LTV Steel would soon obtain a government-guaranteed loan which would allow it to reorganize and come out of bankruptcy.

> The Defendants knew that this was not true.  They knew, or should have known, that LTV Steel's September 2001 request for a government-backed loan to emerge from bankruptcy was considered "dead on arrival" by the government.  They also knew that LTV Steel's lenders in the chapter 11 bankruptcy case would not agree to concessions the government loans required.  By early September 2001, the Defendants knew LTV Steel had lost its largest customer, would have insufficient cash to continue to operate by the end of November 2001 and could not emerge from bankruptcy as a reorganized going concern.

-2-

But these facts were hidden from the Bankruptcy Court and the public. Persons doing business with LTV Steel after early September 2001 were told by some of the Defendants that LTV Steel's new obligations would be paid in the ordinary course of business.  It was not until December 2001, during evidentiary hearings before the Bankruptcy Court held after irrevocable harm to LTV Steel had been done, that the true facts were revealed.  While the Defendants were silent regarding LTV Steel's severe liquidity crisis, LTV Steel's value was diminishing day by day, and it could not pay even its post-bankruptcy debts.

Defendants Bricker and John Turner took these actions because their goal was to profit personally from opportunities presented by LTV Steel's severe financial problems.  During the pendency of LTV Steel's chapter 11 bankruptcy case, they secretly tried to acquire LTV Steel and an affiliate, while having LTV Steel pay for the cost of that effort.  Some of the Defendants took these actions because they wanted to preserve their jobs and continue receiving salary and benefits for as long as possible, even though LTV Steel suffered harm as a result of their conduct.

As a direct and proximate result of the Defendants' acts and omissions . . . , LTV Steel suffered damages of no less than $160 million.

(*Id.* at ¶¶ 1-7.)  The following Defendants are included in the Amended Complaint:

- William H. Bricker, a Director of LTV Steel, and CEO from November 9, 2000 through November 29, 2001.  William Jeffrey Bricker has been substituted in place of William H. Bricker, now deceased,  in his capacity as Independent Executor of William H. Bricker's estate.

- John D. Turner, Chief Operating Officer of LTV Steel from February 23, 2001 until December 12, 2001, and Chief Executive Officer of Copperweld, an affiliate of LTV Steel.

- Glenn J. Moran, Director of LTV Steel through December 2, 2005.  He was also Senior Vice President, General Counsel, and Secretary of LTV Steel from December 1, 2000 through December 12, 2001.

- Thomas L. Garrett, Senior Vice President and Chief Financial Officer of LTV Steel from September 4, 2001 through December 10, 2001.

- James R. Baske, Vice President – Engineering, Procurement Raw Materials and Environmental Control of LTV Steel.

- Dennis Babcock, General Manager of Purchasing at LTV Steel and second-in-command of LTV Steel's procurement department.

- George T. Henning, Vice President and Chief Financial Officer of LTV Steel from June 11, 1999 through September 4, 2001, and Treasurer of LTV Steel from April 12, 2001 through October 29, 2001. He was also Vice President of Finance from September 4, 2001 through November 28, 2001.

- Eric Evans, Vice President and Controller of LTV Steel from June 11, 1999 through October 1, 2001.

- Clifford R. Brown, Vice President and Treasurer of LTV Steel from October 29, 2001 through December 12, 2001.

(*Id.* at ¶¶ 21-31.) At the hearing on the pending Motions, the parties advised this Court that Defendants Clifford Brown and Dennis Babcock are no longer parties to this case. In addition, the parties filed a Stipulation to Dismiss Clifford Brown (ECF # 94) and a Stipulation to Dismiss Dennis Babcock (ECF # 93). Accordingly, Clifford Brown and Dennis Babcock are TERMINATED as Defendants in this action, and their pending Motions to Dismiss are MOOT and should be TERMINATED from this Court's docket. (ECF # 50, ECF # 59.)

In the Amended Complaint, Plaintiff attempts to bring the following causes of action: breaches of fiduciary duty of loyalty under state and federal law (Count I), breaches of fiduciary duty of good faith under state and federal law (Count II), breaches of fiduciary duty of care under state and federal law (Count III), aiding, abetting, inducing, or participating in breach of fiduciary duties and other misconduct (Count IV), negligent supervision (Count V), waste (Count VI), deepening insolvency and wrongful prolongation of corporate existence (Count VII), breaches of fiduciary duties owed to creditors (Count VIII), constructive fraud (Count IX), aiding and abetting constructive fraud (Count X), fraud (Count XI), and negligent misrepresentation (Count XII). (ECF # 31 at 56-80.)

Defendants filed an Omnibus Motion to Dismiss the First Amended Complaint, requesting that this Court dismiss the Amended Complaint for the reasons set forth below. (ECF

-4-

# 53.)  Plaintiff filed an Opposition to the Omnibus Motion to Dismiss the First Amended

Complaint (ECF # 68), and Defendants filed a Reply Brief in support of the Omnibus Motion to

Dismiss (ECF # 81).

Defendants Bricker, Turner, Henning, Evans, Baske, Moran and Garrett filed individual

Motions to Dismiss, incorporating the Omnibus Motion to Dismiss and moving to dismiss

individually pursuant to Rule 12(b)(6).  (ECF # 46, ECF # 47, ECF # 49, ECF # 51, ECF # 52,

ECF # 58, ECF # 61.)  Plaintiff filed a Consolidated Brief in Opposition to Defendants'

individual Motions to Dismiss (ECF # 69), and the individual Defendants filed Reply Briefs in

support of their respective Motions to Dismiss (ECF # 76, ECF # 78, ECF # 79, ECF # 80, ECF

# 82, ECF # 83, ECF # 84).

This Court held a hearing on all of Defendants' Motions to Dismiss.  (ECF # 90.)

Subsequent to the hearing and with leave of Court, the parties filed additional briefs relating to

the pending Motions to Dismiss.  In particular, Defendants filed a Post-Hearing Supplemental

Brief in Support of their Omnibus and Individual Motions to Dismiss the Amended Complaint

(ECF # 91) and Plaintiff filed a Supplemental Brief in Opposition to Defendants' Motions to

Dismiss the Amended Complaint (ECF # 92).  Thus, the Motions to Dismiss have all been

briefed fully and are now ripe for consideration.

## II. STANDARD OF REVIEW

In this case, Defendants have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

More specifically, Defendants seek to dismiss Plaintiffs' claims for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Where the defendant asks the court to dismiss the plaintiff's claims for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1), the court need only determine whether it has jurisdiction over the plaintiff's claims. The Sixth Circuit has adopted two standards of dismissal under Rule 12(b)(1), depending upon whether the movant makes a facial or factual attack on the plaintiff's complaint. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).  A facial attack merely questions the sufficiency of the pleadings.  In reviewing a facial attack, the court shall apply the same standard applicable to Rule 12(b)(6) motions.  On the other hand, where a district court reviews a plaintiff's complaint under a factual attack, the court does not presume that the plaintiff's allegations are true.  In such cases, the court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.  *See id.; see also Tennessee Protection & Advocacy, Inc. v. Board of Educ.,* 24 F. Supp. 2d 808, 812-13 (M.D. Tenn.1998).  The case at bar involves a factual attack on the sufficiency of Plaintiff's pleadings. Thus, the Court may review evidence beyond the pleadings in order to determine whether it has jurisdiction to hear the instant case.

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of complaint without being subject to discovery.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003).  In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff.  *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the

-6-

entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)").  Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable.  *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).  It is with these standards in mind that the instant Motions must be decided.

### III. DISCUSSION

In this case, the individual Motions to Dismiss (ECF # 46, ECF # 47, ECF # 49, ECF # 51, ECF # 52, ECF # 58, ECF # 61) incorporate the Omnibus Motion to Dismiss.  (ECF # 53.) Accordingly, those Motions will be considered together in this Memorandum Opinion and Order and shall be referred to collectively as "the Motions to Dismiss."[1]  After its consideration of the Motions to Dismiss, the Court shall separately examine the remaining issues raised solely in the individual Motions.

---

[1]  Unless otherwise noted, citation shall be to the Omnibus Motion only, which, as set forth above, is incorporated into the individual Motions to Dismiss.

-7-

## A. Plaintiff Has Sued the Wrong Defendants

In the Motions to Dismiss, Defendants argue that this action should be dismissed at the outset because Plaintiff has sued the wrong Defendants.  (ECF # 53 at 24.)  More specifically, Defendants assert:

> Although the ACC moved for and was granted authority to pursue its claims against the directors and officers of **both** LTV Corp. and LTV Steel, and named both in its Proposed Complaint, the ACC has pursued claims against defendants in their representative capacities as the directors and officers of LTV Steel.  The ACC's strategic decision to not sue the directors and officers of LTV Corp. is ultimately fatal to the ACC's action, as the decisions and actions about which it now complains were undertaken by the directors of LTV Corp. in that capacity – not by the directors and officers of LTV Steel.

(*Id.*)  Defendants contend that, although the Bankruptcy Court authorized an action against two groups of defendants, namely the directors and officers of both LTV Corp. and LTV Steel, Plaintiff's decision to pursue only the directors and officers of LTV Steel  is a "fatal" one.  (*Id.*)

Having reviewed the Amended Complaint in the instant case, the Court finds that, despite Defendants' arguments to the contrary, Plaintiff's decision not to pursue claims against the directors and officers of LTV Corp. is not fatal to the Amended Complaint.  Plaintiff has alleged sufficient facts that, if proven, could give rise to liability on the part of Defendants.  Furthermore, even assuming that facts are established to demonstrate the LTV Corp. directors and officers are responsible, Plaintiff alleges that such evidence would demonstrate that "the Defendants abdicated their duties, despite their known duty to act, and thereby violated their duty of good faith."  (ECF # 68 at 28.)  Accordingly, the Court shall not dismiss the Amended Complaint on this basis.

## B. Standing

Defendants likewise contend that Plaintiff lacks standing to bring the alleged claims, and

-8-

the Amended Complaint should thus be dismissed pursuant to Rule 12(b)(1).  More specifically, Defendants argue that Plaintiff is not a properly authorized statutory committee of creditors, it does not have derivative standing to pursue its claims under *Gibson Group*, and Plaintiff's claims are individual in nature.  The Court considers these arguments in turn.

     **1.**        **Plaintiff Is Not a Properly Authorized Statutory Committee of Creditors**

Defendants argue that Plaintiff, the ACC, is not a properly authorized statutory committee of creditors eligible to bring the instant action.  Defendants set for their position as follows:

> In appointing the ACC, the United States Trustee referenced 11 U.S.C. § 1102(a) of the Bankruptcy Code.  Section 1102(a)(1) of the Bankruptcy Code provides in relevant part that "the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate."  Here, there is no dispute that the ACC's constituents are not "equity security holders" under § 1102(a)(1).  Nor are they "creditors" for purposes of their own action against the defendants, as § 101(10)(A) of the Bankruptcy Code defines the term "creditor," in pertinent part, as an "entity that has a claim against the debtor **that arose at the time of or before the order for relief concerning the debtor.**"  To be a creditor, therefore, an entity or individual has to have a claim against the debtor that arises **before** the debtor files his bankruptcy petition.  As defined by the Bankruptcy Code, "creditors" hold *pre*-petition claims, not *post*-petition administrative expense claims under 11 U.S.C. § 503.

(ECF # 53 or at 16-17 (emphasis in original) (internal citations omitted).)  Thus, according to Defendants, a plain reading of the Bankruptcy Code provides that Plaintiff, a group of administrative claimants, is not eligible to be appointed to a committee under 11 U.S.C. § 1102. (*Id.* at 17.)  On this basis, Defendants argue that Plaintiff lacks statutory authority to sue, and they move to dismiss the Amended Complaint.  (*Id.* at 17-18.)

Plaintiff opposes Defendants' Motions, arguing that it is a valid, "official" statutory committee authorized to pursue its claims in the instant case.  (ECF # 68 at 12.)  In particular,

-9-

Plaintiff sets forth its position as follows:

> The plain language of Section 1102(a)(1) and (b)(1) of the Bankruptcy Code authorized the U.S. Trustee to appoint the ACC in the LTV Steel case.  Section 1102 provides, in relevant part:
>
>> (a) (1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees *of creditors* or of equity security holders as the United States Trustee deems appropriate.
>>
>> (b)(1) A committee *of creditors* appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold even the largest *claims* against the debtor *of the kinds represented on such committee.*
>
> Therefore, a committee comprised of (i) "persons" (ii) who are "creditors," and (iii) who hold "claims against the debtor of the kinds represented on such committee" can be an "official committee."
>
> The Defendants have never disputed that the Administrative Committee's members are "persons."  LTV Steel's Bankruptcy Schedules show that each of the individual members of the Administrative Committee were "creditors" holding unsecured claims that "arose at the time of or before the order for relief" upon appointment.  Contrary to Defendants' argument, all the Administrative Committee's members were "creditors" upon appointment.  Section 1102(a)(1)'s second requirement is, therefore, met.
>
> The Defendants do not dispute that the Administrative Committee's members held "claims of the kind represented on such committee" upon appointment.  A "claim" is defined, in pertinent part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  That definition plainly encompasses both pre- and post-petition claims.  Because every Administrative Committee member held both upon appointment, the third and final statutory requirement is met.

(ECF # 68 at 13-14 (citation omitted).)  Accordingly, Plaintiff argues that, under the plain language of the Bankruptcy Code, the ACC is authorized.  (*Id.* at 14.)  Plaintiff asserts that Defendants attempt to limit a committee to only those having pre-bankruptcy unsecured claims

-10-

or those without administrative claims is improperly reading new language into the Bankruptcy Code. (*Id.*) Plaintiff asserts that, plainly, a "claim" can consist of a post-petition obligation. (*Id.*)

Upon review of the relevant statutory language as well as the relevant case law, this Court finds merit in Plaintiff's position. Because the ACC's members are creditors under the statutory definition, the Court finds that Plaintiff has jurisdiction to proceed in this case. The Court shall not dismiss the instant action on this basis.

### 2. Plaintiff Does Not Have Derivative Standing to Pursue Its Claims Under *Gibson Group*

Next, Defendants assert that Plaintiff does not have standing to pursue its claims under a four-part test known as the "*Gibson Group*" test. (ECF # 53 at 18.) The test arose in *In re Gibson Group*, 66 F.3d 1446 (6th Cir. 1995), wherein the Sixth Circuit held that a creditors' committee has standing to initiate an action where:

> (1) a demand has been made upon the statutorily authorized party to take action, (2) the demand is declined, (3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and (4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case.

*In re Gibson Group*, 66 F.3d at 1446. In this case, Defendants argue that Plaintiff fails to satisfy the third and fourth prongs of the *Gibson Group* test. (ECF # 53 at 18.)

With respect to the third prong, Defendants contend that Plaintiff fails to satisfy its burden of asserting "colorable claims" that are economically justified. (*Id.* at 19.) Defendants claim that the Bankruptcy Court granted authorization to Plaintiff without conducting the cost-benefit analysis required by *Gibson Group*. (*Id.* at 21-22.) On this basis, Defendants assert that Plaintiff lacks standing, and the Amended Complaint should be dismissed. (*Id.* at 22.)

-11-

As to the fourth prong of the *Gibson Group* test, Defendants allege that Plaintiff failed to satisfy its burden of demonstrating that LTV Steel's decision was unjustifiable or an abuse of discretion.  (*Id.* at 23.)  To the extent that the Bankruptcy Court resolved this issue in Plaintiff's favor, Defendants urge that the Bankruptcy Court's ruling is both factually and legally wrong. (*Id.*)  According to Defendants, they provided detailed reasons to establish that "the reason for not acting was justified," and, as such, Plaintiff had the burden of demonstrating that the decision was unjustifiable or an abuse of discretion.  (*Id.*)  Defendants allege that Plaintiff's failure to do so warrants dismissal of the instant case.  (*Id.*)

In opposition, Plaintiff explains that these issues were litigated previously in proceedings before the Bankruptcy Court and resolved in Plaintiff's favor.  (ECF # 68 at 2.)  Plaintiff further contends that Defendants "were told by the Sixth Circuit that they may not appeal these rulings." (*Id.*)  Based upon its position that Defendants are barred from disputing the rulings of the Bankruptcy Court on this issue, Plaintiff asserts that the Motions to Dismiss on this basis should be denied.  (*Id.* at 2-3.)

A review of the record in this case makes clear that the Bankruptcy Court indeed considered and ruled upon the issues raised by Defendants.  Its rulings were in Plaintiff's favor, thus allowing Plaintiff to pursue its claims against Defendants in this Court.  In a Memorandum Opinion and Order resolving an appeal of the Bankruptcy Court's determination, the Honorable Christopher A. Boyko summarized the underlying background as follows:

> In September of 2005, the Bankruptcy Court issued a Standing Order authorizing the ACC to pursue litigation against certain LTV officers, including Appellant, Glenn J. Moran, on behalf of the LTV estate.
>
> The Bankruptcy Court relied on Sixth Circuit precedent in granting the ACC authorization to pursue the claims. The relevant law stated that in order for a

creditors' committee to have standing to commence litigation on behalf of a bankrupt entity, the committee must show the following four elements:

> (1) a demand has been made upon the statutorily authorized party to take action, (2) the demand is declined, (3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and (4) the inaction is an abuse of discretion ('unjustified') in light of the debtor-in possession's duties in a Chapter 11 case.

*Canadian Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group)*, 66 F.3d 1436, 1446 (6th Cir.1995). These requirements are known as the *Gibson Group* requirements.

> During the Bankruptcy Court proceedings, Moran disputed whether the ACC had alleged colorable claims against him. This was the only prong of the *Gibson Group* requirements that was in dispute. After several months of deliberation, the Bankruptcy Court concluded that the ACC had alleged colorable claims. Therefore, the ACC had satisfied the *Gibson Group* elements and was authorized to pursue litigation against Moran and others on behalf of the LTV estate.

*Moran v. Official Committee of Administrative Claimants*, No. 1:05 CV 2285, 2006 WL 3253128, at *1 (N.D. Ohio Nov. 8, 2006). Judge Boyko dismissed appeals of the Bankruptcy Court standing order granting Plaintiff authority to bring this action and was affirmed subsequently by the Sixth Circuit. *See In re LTV Steel Co. Inc.*, 560 F.3d 449 (6th Cir. 2009). These issues have been litigated fully, and the Court shall not revisit them here. *See Heyliger v. State Univ. & Community College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997); *Birgel v. Bd. of Com'rs of Butler County.*, 125 F.3d 948, 951-52 (6th Cir. 1997). Accordingly, this Court finds that Plaintiff has satisfied the standard set forth in the *Gibson Group* and may proceed in the instant matter.

### 3.      Plaintiff's Claims are Individual in Nature

Defendants likewise allege that Plaintiff lacks standing, and the Amended Complaint should be dismissed, because the claims alleged belong to individual administrative claimants and do not constitute injury or harm to the estate of LTV Steel.  (ECF # 53 at 26.)  As with Defendants' argument concerning the *Gibson Group* test, this argument was set forth and resolved by the Bankruptcy Court in Plaintiff's favor.  (ECF # 68 at 15.)  Further, in its most basic terms, the Amended Complaint alleges that the misconduct harmed LTV Steel by dissipating the value of its assets and estate.  Contrary to Defendants' assertions, such allegations are based on corporate, as opposed to individual, damage.  *See NCP Litig. Trust v. KPMG*, 399 N.J. Super. 606, 625 (N.J. Super Ct. Law Div. 2007) (recognizing corporate damage as sufficient to overcome a Motion to Dismiss).  Hence, the Amended Complaint shall not be dismissed on this basis.

### C. Statute of Limitations

In their Motions to Dismiss, Defendants argue that the action is barred by the four-year statute of limitations in Ohio Revised Code § 2305.09(D).  (ECF # 53 at 30.)  According to Defendants, given that this action commenced on September 13, 2005, any claim relating to "conduct prior to September 12, 2001 is absolutely barred by the applicable four-year limitations period."  (*Id.*)  Defendants assert that Plaintiff's attempt to bring claims for activity that occurred pre-petition, as well as during the first eight months of the bankruptcy proceedings, should be barred.  (*Id.* at 30-31.)

Plaintiff counters that none of its claims are barred by the statute of limitations.  (ECF # 68 at 29.)  According to Plaintiff, the statute of limitations on fiduciary misconduct during a

-14-

bankruptcy case does not begin to run until the final accounting is filed with the Bankruptcy Court or, at the earliest, until the fiduciary's breach of trust is discovered.  (*Id.*)  Plaintiff states that the "final report and final account referred to in section 704(a)(9) of the Bankruptcy Code has not yet been filed in the LTV Steel case."  (*Id.* at 30.)  Thus, Plaintiff alleges that the statute of limitations did not begin to run in this case until the breach of trust was discovered.  (*Id.*)  Plaintiff asserts that, here, the earliest anyone knew of the misconduct was November 20, 2001, when the Asset Protection Plan (the "APP") Motion was filed and disclosures were made regarding some of the misconduct.  (*Id.* at 32.)  Hence, Plaintiff contends that November 20, 2001 is the earliest date from which any applicable statute of limitations could begin to run.  (*Id.*)

In the alternative, Plaintiff argues that, even if the statute of limitations as set forth by Defendants is applicable, the allegations in the Amended Complaint "support the plausible inference that the claims are based on misconduct and damage that occurred and accrued within the limitations period."  (*Id.* at 34.)  To the extent that some of the claims fall outside of that limitations period, Plaintiff asserts that "the tort was continuing and thus not complete until the harm occurred within the limitations period."  (*Id.*)  On this basis, Plaintiff argues that the "continuing tort doctrine" operates to save any allegations and related damages arising from conduct prior to September 13, 2001.  (*Id.*)

Next, Plaintiff argues that the statute of limitations advocated by Defendants was tolled by "the fraudulent concealment of the facts giving rise to the claims, and by the doctrine of equitable tolling."  (*Id.* at 37.)  Plaintiff alleges:

The earliest the Defendants' misconduct was disclosed was November 20, 2001, the

-15-

date of the APP Motion, within four years of the action's commencement. Until that date, LTV Steel's true financial condition and the events described in the Complaint were kept secret, and the statute of limitations period did not begin to run until that date.

(*Id.*)  On this basis, Plaintiff alleges that it has properly pleaded fraudulent concealment and equitable tolling, and that its claims should not be dismissed based upon the statute of limitations.  (*Id.* at 38.)

Finally, Plaintiff argues that Defendants' statute of limitations argument raises questions of fact that cannot be resolved at this early stage of the litigation.  (*Id.*)  Plaintiff claims that Defendants' statute of limitations defense raises fact issues regarding "which of the Defendants knew what and when, what they did or did not do about it, what were their motivations in reacting that way, whether their conduct was appropriate, and what amount of harm accrued to LTV as a result, and when."  (*Id.*)  As such, Plaintiff asserts that the statute of limitations issue should not be resolved in the context of the pending Motions to Dismiss.  (*Id.* at 39.)

This Court finds that it is too early in this litigation to resolve the statute of limitations issue.  That is, because the statute of limitations issue raised in this case depends upon contested questions of fact, the Motions to Dismiss are denied without prejudice as premature.  Defendants may raise this issue at a later stage based upon a Motion for Summary Judgment once facts relevant to this issue have been developed further.

### D. Fiduciary Duty Claims

In the Motions to Dismiss, Defendants contend that Plaintiff cannot sustain its fiduciary duty claims in Counts I-III of the Amended Complaint.  The specific claims relating to fiduciary duties are as follows:  in Count I of the Amended Complaint, Plaintiff alleges breaches of

-16-

fiduciary duty of loyalty under state and federal law; in Count II of the Amended Complaint,

Plaintiff alleges breaches of fiduciary duty of good faith under state and federal law; and in

Count III of the Amended Complaint, Plaintiff alleges breaches of fiduciary duty of care under

state and federal law.  Both Plaintiff and Defendants agree that the claims for alleged breaches

of fiduciary duties are governed by New Jersey law.[2]  (ECF # 31 at ¶¶ 242, 253, 264; ECF # 53

at 32.)  Hence, the Court shall apply New Jersey law in resolving these claims.

Defendants also argue that Counts IV, VI, VII, VIII, IX, X and XI are duplicative of

Counts I-III and should be dismissed on this basis.  The purportedly duplicative Counts are as

follows:  Count IV alleges aiding, abetting, inducing or participating in breach of fiduciary

duties and other misconduct, Count VI alleges waste; Count VII alleges deepening insolvency

and wrongful prolongation of corporate existence; Count VIII alleges breaches of fiduciary

duties owed to creditors; Count IX alleges constructive fraud; Count X alleges aiding and

abetting constructive fraud; and Count XI alleges fraud.  The Court examines these claims in

turn.

    **1.**        **Counts I-III**

### a. Breaches of Fiduciary Duty of Loyalty

Under New Jersey law, directors or officers of a corporation breach the duty of loyalty if

they engage in a self-interested transaction that was unfair to the plaintiff.  *See In re Fedders*

*North America, Inc.*, 405 B.R. 527, 540 (D. Del. 2009).  Generally, "duty of loyalty mandates

that the best interest of the corporation and its shareholders take precedence over any interest

---

[2]    The parties likewise agree that the well-developed fiduciary duty jurisprudence of Delaware can be relied upon when determining the scope of such duties in New Jersey. (ECF # 53 at 32; ECF # 68 at 18, n. 44.)

possessed by a director, officer, or controlling shareholder and not shared by the stockholders generally." *Id.* Moreover, the liability for breach of duty of loyalty extends beyond the self-dealing individual to the directors and officers that fail to act to prevent the self-dealing based upon, for instance, a desire to maintain their own position or salary, *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009), *Ad Hoc Comm. of Equity Holders v. Wolford*, 554 F. Supp. 2d 538, 559-60 (D. Del. 2008), and those that place a self-dealing individual's financial interest above the interests of the corporation, *In re Healthco Int'l Inc.*, 208 B.R. 288, 303 (Bankr. D. Mass. 1997) (applying Delaware law). The business judgment rule operates to shield directors and officers of a corporation from liability, however, unless the plaintiff is able to demonstrate that "the sole or primary motive of the defendant was to retain control." *Johnson v. Trueblood*, 629 F.2d 287, 292-93 (3d Cir. 1980).

In Count I of the Amended Complaint, Plaintiff alleges, *inter alia*, that Defendants breached their fiduciary duties in the following ways:

> (a) As to all Defendants, from and after no later than the first week of September 2001, causing or allowing LTV Steel to incur substantial amounts of post-bankruptcy debt that the Defendants knew or should have known could not be paid while incurring losses of between $1 Million to $3 Million per day through at least November 20, 2001;
>
> (b) As to all Defendants, from and after no later than the first week of September 2001, failing to cause LTV Steel to carry out the going concern sale process contemplated by the Asset Protection Plan, which had change of control implications for the Defendants, or to take any other appropriate measures to prevent the dissipation of the value and assets of LTV Steel through at least November 20, 2001;
>
> (c) As to all Defendants, from and after no later than the first week of September 2001, concealing or allowing to be concealed from the Bankruptcy Court and parties-in-interest entitled to notice of material facts during the bankruptcy case LTV Steel's true financial condition in order to sustain operations at a time when Bricker and Turner were, upon information and belief, engaging in self-dealing and all Defendants knew or should have known that vendors would rely on the Defendants' omissions, thereby causing or allowing LTV Steel to incur substantial amounts of

-18-

post-bankruptcy debt that the Defendants knew or should have known could not be paid;

(d) As to all Defendants, from and after no later than the first week of September 2001, making or allowing to be made materially misleading public statements regarding the company's true financial condition and the status of the Byrd Loan when the Defendants (a) knew or should have known that LTV Steel was in the midst of a "severe liquidity crisis" which would render it unable to either (i) pay the post-bankruptcy debts it was being caused or allowed to incur or (ii) reorganize and emerge from bankruptcy in its then-current form, and (b) knew or should have known that vendors would rely on the materially misleading public statements, thereby causing or allowing LTV Steel to incur substantial amounts of post-bankruptcy debt that the Defendants knew or should have known could not be paid;

(e) As to all Defendants, failing to curtail or control the activities of LTV Steel's procurement agents, or, in the alternative, instructing LTV Steel's procurement agents to continue all efforts to incur substantial amounts of debt outside the ordinary course of business which the Defendants knew or should have known could not be paid, thus dissipating the value of LTV Steel and its assets;

(f) Causing or allowing to be transferred large amounts of LTV Steel's inventory to Copperweld, (i) as to Bricker, Moran, Turner and Henning, pre-bankruptcy, when those Defendants knew or should have known that Copperweld's bankruptcy filing was imminent, and that LTV Steel would receive little or no payment for those shipments to Copperweld, and (ii) as to all Defendants, post-bankruptcy, pursuant to a secret outside the ordinary course of business "consignment program" or other programs that were neither put to nor approved by the Bankruptcy Court, which gave Copperweld more favorable terms than were standard in the industry or which were given by LTV Steel to its arms' length suppliers, and which exacerbated LTV Steel's dire financial condition and dissipated the value and assets of LTV Steel's bankruptcy estate;

(g) As to all Defendants, from and after no later than the first week of September 2001 through at least November 20, 2001, using, or allowing to be used, estate assets outside the ordinary course of business in violation of 11 U.S.C. § 363 by causing or allowing LTV Steel to operate while incurring substantial losses in order to benefit themselves;

(h) As to all Defendants, from and after no later than the first week of September 2001 through November 20, 2001, causing or allowing LTV Steel to continue to incur significant unsecured debt outside the ordinary course of business in violation of 11 U.S.C. § 364 at a time when the Defendants knew or should have known that LTV Steel could not pay that debt;

(i) As to Bricker, Turner, Moran, Garrett and Brown, accelerating and paying, or allowing to be accelerated and paid, large "retention" bonus and salary amounts to Bricker upon his resignation at a time when he, at most, was entitled to an administrative claim for those amounts which would be paid pro rata along with other unpaid administrative claims for that period, thereby allowing Bricker to

-19-

receive much more favorable treatment of his claims than the treatment received by other non-insider claimants with claims at the time;

(j) As to Bricker, engaging in multiple acts of self-dealing including, upon information and belief, (i) sharing confidential LTV Steel information with Clayton, Dubilier & Rice, (ii) commissioning Towers Perrin to conduct a replacement labor study regarding the Indiana Harbor Works for his benefit and, upon information and belief, paying Towers Perrin for their efforts out of bankruptcy estate assets, (iii) causing himself to be paid his accelerated "retention" bonus and annual salary as described herein, (iv) from and after May or June 2001 through November 29, 2001, secretly acting in furtherance of his self interest in acquiring LTV Steel facilities and, upon information and belief, Copperweld, and (v) otherwise acting or omitting to act out of concern for his continued employment as CEO and Chairman of LTV Steel; (k) As to Turner, engaging in multiple acts of self-dealing, including without limitation, upon information and belief, causing LTV Steel to transfer significant amounts of inventory to Copperweld, which Turner consistently favored as a self-professed "Copperweld guy," and which he sought to acquire; (l) As to Garrett, Turner, Moran, Baske, Babcock, Henning, Brown and Evans, engaging in multiple acts of self-dealing by allowing themselves to be systematically dominated and controlled at all relevant times by Bricker, among others, and acting or omitting to act solely out of concern for their own continued employment with LTV Steel;

(m) As to Bricker, Turner, Garrett, Baske, Babcock, Henning, Moran and Brown, causing or allowing substantial repairs to be carried out at the Indiana Harbor Works throughout October and November 2001, at a time when the Defendants knew or should have known the estate would be burdened with substantial unpaid claims for that work; and

(n) As to Moran, causing or allowing substantial repairs to be carried out at the Indiana Harbor Works throughout October and November 2001, at a time when Moran knew or should have known the estate would be burdened with substantial unpaid claims for that work, so as to give Moran an opportunity to receive substantial bonus payments under the "Variable Rate Retention Plan" component of the Asset Protection Plan KERP contemplated at that time.

(ECF # 31 at ¶ 244.)  The Court finds that these allegations are sufficient to state a claim for breach of loyalty under the relevant law.  Given that the underlying record his not yet been fully developed through discovery, however, the Court finds that, at the present time, it is unable to determine whether the business judgment rule operates in these circumstances to shield the directors and officers from liability.  As such, the Motions to Dismiss Count I of the Amended Complaint are denied.

-20-

**b. Breaches of Fiduciary Duty of Good Faith**

In Count II of the Amended Complaint, Plaintiff alleges breaches of fiduciary duty of good faith under state and federal law.  Defendants move to dismiss this claim based upon their assertion that the duty of good faith "is not recognized as a distinct duty separate from the duties of loyalty and care."  (ECF # 53 at 32.)  In support of this position, Defendants direct this Court's attention to *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006), wherein the Court held "although good faith may be described colloquially as part of a 'triad' of fiduciary duties that includes the duties of care and loyalty, the obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty."

This Court recognizes that the duty of a fiduciary to act in good faith is not a separate duty on which liability may be based.  Rather, it is a subset of the duty of loyalty.  As such, the Court's consideration of the duty of loyalty allegations in this case necessarily includes an inquiry concerning whether Defendants acted in good faith.  Thus, the Court shall not, as Defendants suggest, merely dismiss Count II of the Amended Complaint.  Rather, the Court shall merge the allegations contained therein with Count I for breach the duty of loyalty, and the Motions to Dismiss the claim on this basis are denied.

**c. Breaches of Fiduciary Duty of Care**

In order to state a claim for a breach of the fiduciary duty of care, Plaintiff must demonstrate that Defendants were grossly negligent in acting or failing to act.  *See In re USA Detergents, Inc.*, 418 B.R. 533, 543-44 (D. Del. 2009).  What conduct constitutes gross negligence varies based upon the circumstances of a particular case, but the general requirement is that "directors and officers . . . fail to inform themselves fully and in a deliberate manner."  *Id.*

In Count III of the Amended Complaint, Plaintiff alleges, *inter alia*, that Defendants were grossly negligent in that they knew or should have known the true financial condition of the corporation and should have taken measures to stop the dissipation of its value and assets. The facts as set forth by Plaintiff in the Amended Complaint are sufficient at this stage of the litigation to suggest that Defendants were grossly negligent in acting or failing to act under the circumstances.  Stated another way, Plaintiff has alleged sufficient facts that, if proven at trial, could show that Defendants were grossly negligent and thus breached their duties of care.  As such, the Motions to Dismiss on this basis are denied.

### 2. Counts IV, VI, VII, VIII, IX, X and XI

In the Motions to Dismiss, Defendants argue that Count IV (aiding, abetting, inducing or participating in breaches of fiduciary duties, and other misconduct), Count VI (waste), Count VII (deepening insolvency and wrongful prolongation of corporate existence), Count VIII (breaches of fiduciary duties owed to creditors), Count IX (constructive fraud), Count X (aiding and abetting constructive fraud) and Count XI (fraud)[3] are duplicative of Counts I-III and should be dismissed on this basis.  Because Rule 8 of the Federal Rules of Civil Procedure permits pleading alternative theories of recovery, the Motions to Dismiss on this basis are denied.

### a. Deepening Insolvency and Wrongful Prolongation of Corporate Existence

Defendants also argue that, in addition to being duplicative, the claim for deepening

---

[3]     It appears that Defendants included Count XI for fraud in error, and they instead intended to argue that Count XII for Negligent Misrepresentation is duplicative.  The Court makes this assumption based upon the fact that Defendants argue incorrectly that "Count XI (Negligent Misrepresentation)" should be dismissed, whereas the Amended Complaint reflects that Count XI is for fraud, and Count XII is for Negligent Misrepresentation.  In either case, the Court's determination remains the same: the Federal Rules permit Plaintiff to plead in the alternative, and the Court shall not grant the Motions to Dismiss on this basis.

insolvency in Count VII should be dismissed because it has not been recognized as an

independent cause of action or damages theory in the post-petition context.  (ECF # 53 at 44.)

In opposition, Plaintiff argues:

> The [Amended] Complaint alleges that LTV Steel was worth a certain amount at the beginning of the Fall of 2001, and that as a result of the Defendants' misconduct it was worth far less.  New Jersey recognizes this as corporate damage sufficient to survive a motion to dismiss on the grounds argued here:
>
>> [C]orporate damage in the form of 'increased liabilities, decrease in fair asset value, and lost profits' encompasses the same concept as deepening insolvency.  Whether courts term it 'deepening insolvency' or describe in detail the gamut of destruction that the term is meant to embrace, the bottom line is the same.  Harm is harm. Where there is harm, the law provides a remedy.

(ECF # 68 at 15 (internal citations omitted) (quoting *NCP Litig. Trust v. KPMG*, 399 N.J. Super.

606, 625 (N.J. Super. Ct. Law Div. 2007)).)  There exists considerable disagreement as to

whether "deepening insolvency" should be recognized as an independent cause of action under

New Jersey law.  *See Popular Leasing U.S.A., Inc. v. Forman*, Civ. Nos. 09-2788 (DRD), 09-

2964 (DRD), 2009 WL 2969519, at *5 (D.N.J. Sept. 14, 2009).  Having said that, however, at

least one Court examining the issue has predicted that, if the New Jersey Supreme Court were to

examine the issue, it "would recognize a claim for deepening insolvency when there has been

harm or damage to the corporate debtor."  *In re Norvergence, Inc.*, 405 B.R. 709, 758-59 (N.J.

2009).  In light of this authority, the Court finds that the Amended Complaint sets forth a cause

of action in Count VII sufficient to overcome the Motions to Dismiss at this time.

### b. Constructive Fraud, Aiding and Abetting Constructive Fraud and Fraud

Defendants move to dismiss Plaintiff's claims for constructive fraud in Count IX, aiding and abetting constructive fraud in Count X,[4] and fraud in Count XI under Federal Rule of Civil Procedure ("Rule") 9(b) for failure to plead them with the requisite level of particularity.  (ECF # 53 at 47-48.)  The pleading requirements in Rule 9(b) are to provide fair notice to the defendants, such that the defendants may prepare a pleading in response to the allegations based upon fraud.  *See Advocacy Org. for Patients and Providers, et al. v. Auto Club Ins. Ass'n, et al.*, 176 F.3d 315, 322 (6th Cir. 1999).  Furthermore, Rule 9(b) requires that claims involving  fraud be pled with particularity in order to:

> place the defendants on notice of the precise misconduct of which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of 'date, place and time' fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  Although the Sixth Circuit reads Rule 9(b)'s requirements liberally, the plaintiff is required to allege the time, place, and content of the alleged misrepresentation; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  *See Advocacy Org. for Patient and Providers, et al.*, 176 F.3d at 322 (quoting *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotations omitted)).

---

[4]  To the extent that the individual Defendants argue that Plaintiff cannot prevail on its aiding and abetting claim because inaction cannot serve as a basis for the cause of action, the Court finds this argument to be without merit.  *See Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 126 (3d 1999) (finding "inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement") (internal quotations omitted).

-24-

In this case, Plaintiff has alleged that Defendants were directors and officers that had knowledge of information regarding the severe liquidity crisis of the corporation, but they concealed that information from the Bankruptcy Court and the public.  (ECF # 31 at ¶¶ 1-7.)  Plaintiff further alleges that Defendants created the illusion that the corporation would obtain a government-guaranteed loan that would allow it to reorganize and emerge from bankruptcy, when they knew that any such suggestion was false.  (*Id.*)  Plaintiff contends that Defendants took these actions for their own benefit, and that the corporation suffered as a result of their conduct.  (*Id.*)  Plaintiff claims that Defendants' actions and alleged failure to disclose material facts caused it to incur damages of no less than $160 million.  (*Id.*)  The Court finds that these allegations are sufficient to satisfy the applicable pleading standards, and the Motions to Dismiss Counts IX through XI are thus denied.

### E. Count V: Negligent Supervision

The Omnibus Motion to Dismiss addresses Count V of the Amended Complaint in a footnote, in which Defendants assert that the claim is barred in New Jersey by the business judgment rule.  (ECF # 53 at 43 n.55.)  Although the business judgment rule generally operates to shield directors and officers of a corporation from liability, in certain circumstances, a plaintiff can overcome the presumption created by the rule.  *See Johnson v. Trueblood*, 629 F.2d 287, 292-93 (3d Cir. 1980).  As the Court discussed previously in this Memorandum Opinion and Order, given that the underlying record his not yet been fully developed through discovery, it is unable to rule on the business judgment rule at the present time.  As such, the Motions to Dismiss on this basis are denied.

**F. Individual Motions**

In addition to the arguments set forth above, the individual Motions to Dismiss attempt to argue disputed facts and evidence and to raise defenses that are not appropriate for resolution on a Motion to Dismiss. To the extent that some or all of these arguments are appropriate for resolution on a Motion for Summary Judgment, the Motions are denied without prejudice to raise those issues for consideration at a later stage in this litigation.

### IV. CONCLUSION

On July 16, 2010, the parties filed a Stipulation to Dismiss Clifford Brown (ECF # 94) and a Stipulation to Dismiss Dennis Babcock (ECF # 93). The Court hereby accepts the Stipulations and, as such, Clifford Brown and Dennis Babcock are TERMINATED as Defendants in this action, and their pending Motions to Dismiss are MOOT and should be TERMINATED from this Court's docket. (ECF # 50, ECF # 59.) Furthermore, for the reasons set forth in this Memorandum Opinion and Order, the Omnibus Motion to Dismiss the First Amended Complaint (ECF # 53), and the individual Motions to Dismiss filed by Defendants William Jeffrey Bricker (ECF # 46), John D. Turner (ECF # 47), George Henning (ECF # 49), Eric Evans (ECF # 51), James Baske (ECF # 52), Glen J. Moran (ECF # 58), and Thomas L. Garrett (ECF # 61) are DENIED.

IT IS SO ORDERED.

　/s/ Donald C. Nugent　　
DONALD C. NUGENT
United States District Judge

DATED:　September 21, 2010