IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF ADMINISTRATIVE CLAIMANTS, on Behalf of LTV Steel Company, Inc., | ) ) ) ) | CASE NO.: 1:05 CV 2158 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WILLIAM H. BRICKER, et al., | ) ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) ) | |

This matter is before the Court on Defendants' Joint Motion to Compel Production of Documents from 21 Non-Parties (ECF # 140) and a Motion for a Protective Order filed by Reed Smith LLP ("Reed Smith") (ECF # 144). For the reasons set forth below, the Motion to Compel Production of Documents is DENIED (ECF # 140), and the Motion for a Protective Order is GRANTED (ECF # 144).

## I. BACKGROUND

In their Joint Motion to Compel, Defendants move this Court for an order to compel 21 non-parties to produce all documents in their possession, custody, and control responsive to subpoenas served upon them by Defendants. (ECF # 140). The non-parties are former members of the Official Unsecured Creditors Committee of LTV Steel Co., Inc. (the "UCC") or professional firms retained to advise the UCC. Through Reed Smith, the non-parties have objected to producing certain documents they allege are protected from disclosure by the attorney-client privilege, the common interest privilege, and/or work-product protection. Reed Smith likewise filed a Motion for a Protective Order, "for the purpose of protecting the attorney-client privilege, common interest privilege and/or work product protections covering the UCC

committee-related deliberations, which are threatened by numerous pending third-party subpoenas issued upon individual UCC members and professionals, seeking documents and deposition testimony regarding privileged matters." (ECF # 144 at 1.)

Also at issue is a Motion to Compel filed by Defendants Evans, Henning, and Baske against United Steelworkers of America ("USWA"). (ECF # 126.) On February 28, 2011, this Court issued a non-document Order granting Defendants' Motion to Compel against USWA. The Court later issued a non-document Order granting USWA's Motion for Extension of Time to Respond to the Motion to Compel. In doing so, the Court effectively reconsidered its prior Order granting the Motion to Compel, allowing USWA to be heard on the issues raised therein. Based upon this, the February 28 non-document Order granting Defendants' Motion to Compel against USWA is hereby VACATED.

This Court held a hearing on the Motions on March 31, 2011, during which counsel presented oral argument with respect to the pending Motions. At the hearing, counsel for Defendants Evans, Henning, and Baske explained that there are two categories at issue in the Motion to Compel against USWA. The first were described as internal bargaining and strategy documents. As to those documents, counsel for Defendants Evans, Henning, and Baske indicated that the parties had negotiated a procedure under which USWA was going to produce those documents and, to that end, filed a proposed Stipulated Protective Order with the Court on March 30, 2011. For good cause shown, the Stipulated Protective Order was GRANTED on April 12, 2011. (ECF # 158.)

Counsel for Defendants Evans, Henning, and Baske next explained that the second category at issue in the Motion to Compel against USWA involves documents to and from

members of the UCC, which is the global issue in Defendants' Joint Motion to Compel Production of Documents from 21 Non-Parties and Reed Smith's Motion for a Protective Order. (ECF # 140, ECF # 144.) To the extent that the Court should reconsider its non-document Order granting the Motion to Compel against USWA, as it has, counsel for Defendants Evans, Henning, and Baske urged that it be decided jointly with Defendants' Joint Motion to Compel Production of Documents from 21 Non-Parties and Reed Smith's Motion for a Protective Order. (ECF # 140, ECF # 144.) This Court agrees, and the Court shall consider the second category raised in the Motion to Compel against USWA in this Memorandum Opinion and Order. Consistent with the rulings set forth above and for the reasons set forth below, the Motion to Compel against USWA is DENIED.[1] (ECF # 126.)

## II. DISCUSSION

The Court first examines whether the attorney-client privilege, the common interest privilege, and/or work-product protection are applicable to the material requested. Next, the Court addresses whether individualized responses to the subpoenas, including privilege logs, are required.

### A. Attorney-Client Privilege

Defendants argue that no privilege applies here because the UCC "disbanded eight years ago and its attorney-client privilege died with it." (ECF # 140 at 1-2.) Defendants likewise argue that no individual former UCC member has standing to assert the attorney-client privilege. (*Id.* at 2.) To the contrary, Reed Smith seeks, *inter alia*, a judicial declaration that the attorney-client privilege covering UCC committee-related deliberations continues to exist and can be

---

[1] To the extent that the Motion relates to the first issue as described by counsel at the hearing, it was rendered MOOT upon the Court's adoption of the Protective Order.

asserted by any UCC member or UCC professional in response to document requests and/or deposition inquiries. (ECF # 144 at 8.) Reed Smith also seeks an order quashing and/or limiting the subpoena served upon it to protect against the disclosure of documents and communications that are subject to the UCC privilege and other protections, and precluding inquiry into such matters during depositions of any Reed Smith professionals. (*Id.*)

Having thoroughly examined the relevant law and argument set forth by counsel with respect to this issue, the Court finds that the interests protected by the attorney-client privilege continue to attach to the committee-related communications and deliberations of the UCC, notwithstanding its dissolution in 2003. Ohio Revised Code § 2317.021, provides as follows:

> Where a corporation or association is a client having the privilege and it has been dissolved, the privilege shall extend to the last board of directors, their successors or assigns, or to the trustees, their successors or assigns.
>
> This section shall be construed as in addition to, and not in limitation of, other laws affording protection to communications under the attorney-client privilege.

(*Id.*) The Southern District of Ohio examined this statute recently in a case that this Court finds instructive, namely *Wallace v. Huntington National Bank*, Nos. 2:09-CV-104, 2:10-CV-469, 2010 WL 3603494 (S.D. Ohio Sept. 10, 2010).

In *Wallace*, the Court looked to O.R.C. § 2317.021 to determine whether the attorney-client privilege extended to a defunct corporation, as opposed to a "dissolved" corporation as specified in the statute. The Court found:

> Although an Ohio corporation must take certain formal actions in order to effect a voluntary dissolution, . . . this Court can find no basis under Ohio law for treating a defunct corporation differently in regard to the attorney-client privilege. Indeed, Ohio law instructs that the language of 2317.02 is to be construed liberally in order to effect its purpose. *See* O.R.C. § 2317.03(H) ("When a case is plainly within the reason and spirit of this section and sections 2317.01 [addressing competent

-4-

> witnesses] and 2317.02 [privileged communications] of the Revised Code, though not within the strict letter, their principles shall be applied."). *See also Shanks v. Waldmann*, No. 5043, 1976 WL 189275 (2nd Dist. Ct. App. Feb. 13, 1976) (quoting O.R.C. § 2317.03 and stating that "a liberal construction shall be applied to carry out the purpose of the privilege").

*Id.* at *7. In light of this command and construing O.R.C. § 2317.021 liberally, the *Wallace* Court found that the defunct corporation retained its right to assert the attorney-client privilege. *Id.*

In this case, the same logic applies. As was acknowledged at the hearing in this matter, the UCC can be deemed to be a dissolved association for purposes of the statute. That is, just as the Court found with respect to the defunct corporation in *Wallace*, this Court can find no basis in Ohio law for treating the UCC differently in regard to the attorney-client privilege.

Defendants argue, however, that even if the UCC is a dissolved association for the purposes of the statute, no former member of the UCC has the authority to assert the privilege. More specifically, Defendants argue that the UCC had no successors. Based upon the fact that the statute at issue is to be construed liberally to effect its purpose, the Court finds that it extends to the UCC. Although, as counsel for Defendants stated in the hearing, this involves what may be "unchartered territory," the Court finds that extending the privilege here is within the reason and spirit of Ohio Revised Code § 2317.021. Accordingly, the Court finds that Reed Smith has satisfied the burden of establishing that the privilege applies.

### B. Common Interest Privilege

Next, Defendants argue that the common interest privilege does not apply because the documents were not privileged to begin with, and there will be no proof that the parties to the communications anticipated litigation at the time or that they agreed to adopt common positions

-5-

on common issues in anticipation of that litigation. (ECF # 140 at 21-23.) The common interest rule allows counsel or parties facing a common litigation opponent to exchange privileged communications without waiving the privilege. *See Travelers Cas. and Sur. Co. v. Excess Ins. Co., Ltd.*, 197 F.R.D. 601, 606-07 (S.D. Ohio 2000). In addition to applying when a common litigation opponent exists, the common interest rule likewise applies "when information is exchanged between 'friendly litigants' with similar interests." *Id.* at 607. There need not be "an absolute congruence in litigation" involving the parties. *See id.* To the contrary, it is sufficient if the parties at issue reasonably anticipate involvement in litigation in which common issues, and common positions, would arise. *See id.*

In this case, privileged communications between members of the UCC and the ACC concerning whether or not to pursue claims against Defendants are covered by the common interest rule. Although the interests of the UCC and the ACC differ in some respects, the monetary pursuit of recovery for the debtor's estate is a position common to both entities. To the extent that the UCC and ACC shared privileged communications intended to be kept confidential concerning whether or not to pursue claims against Defendants, such communications are protected from disclosure pursuant to the common interest rule. Hence, the Court finds that the common interest rule applies and, to the extent that Defendants seek the privileged communications on the basis of an alleged waiver, such material is not discoverable.

### C. Work Product Protection

Finally, as to the work-product protection, Defendants argue that it does not apply because there is no proof that the documents in question were prepared in anticipation of litigation. (ECF # 140 at 19.) To the contrary, Reed Smith argues:

-6-

> During the LTV Bankruptcy proceedings, the management of the company was under scrutiny and it was clearly foreseeable that the former managers and directors of the company might be subject to future adversarial claims. Indeed, following LTV's submission of a motion to approve an Asset Protection Plan ("APP") in November 2001, the focus of the LTV Bankruptcy proceedings fundamentally shifted toward the winding down of LTV's active operations and toward an investigation of LTV's directors and officers. Thus, it is clear that the analyses and investigations performed by the UCC, which investigatory materials were handed over to the Plaintiff, represent classic work product which is protected against disclosure. The Defendants have never attempted to obtain these analyses directly from the Plaintiff, likely recognizing that any such request would be summarily denied by the Court on work product grounds; the damage to adversarial system that the work product doctrine is designed to protect would simply be too great. The Defendants have provided no good reason why the result should be otherwise when seeking to obtain this same documentation from the UCC.

(ECF # 150 at 8.) On this basis, Reed Smith maintains that the documents at issue should be shielded from production. (*Id.*)

The work-product doctrine, governed by Federal Rule of Civil Procedure 26(b)(3), "protects materials prepared in anticipation of litigation or trial, including the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative." *Hilton-Rorar v. State and Federal Communications, Inc.*, No. 5:09-CV-01004, 2010 WL 1486916, at *8 (N.D. Ohio Apr. 13, 2010). The Sixth Circuit defined the term "in anticipation of litigation" in *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006), adopting the "because of" test as the applicable standard. Pursuant to that standard, the Court must examine whether the documents at issue were created because of the subjective anticipation of litigation, as opposed to an ordinary business purpose, and whether that subjective anticipation of litigation was reasonable. *See id.*

Here, the Court finds the work-product protection is applicable. More specifically, included in the requests from the non-parties are documents that were prepared because of

-7-

anticipated litigation, as opposed to an ordinary business purpose. Given the circumstances, the Court concludes that there indeed was a subjective belief that litigation was a possibility, and the belief was objectively reasonable. That is, the anticipation was not too speculative to be objectively reasonable under the circumstances presented. Accordingly, to the extent that Defendants' requests include materials covered by the work-product protection, such material may not be discovered.

### D. Responses to the Subpoenas

For the reasons set forth above, the non-parties may withhold from production information protected by the attorney-client privilege, the common interest privilege, and work-product protection. To the extent that material requested in the subpoenas is not covered by these protections, however, it must be produced. At the hearing in this matter, counsel for Reed Smith represented that Reed Smith has produced some 30,000 documents to Defendants thus far. Counsel for Reed Smith also indicated that Reed Smith provided Defendants a list of other files it maintained from the case, which included an additional 500 bankruptcy boxes. Counsel for Reed Smith asserted that, despite Reed Smith offering on two occasions for Defendants to examine the files, Defendants had not yet availed themselves of the opportunity. Finally, counsel for Reed Smith indicated that Reed Smith provided detailed privilege logs to Defendants that were over 150 pages long. Counsel for Reed Smith stated that his client has spent over 400 hours since December 2010 responding to the discovery, and it has constituted a substantial burden.

Against this backdrop, Reed Smith then raised the issue of whether all non-party recipients of the subpoenas must make individualized responses to the subpoenas, including

privilege logs. Reed Smith represented that the vast majority of the documents consist of material exchanged between the UCC and its members, and thus it has been produced or withheld as protected as a part of the Reed Smith production.

Based upon the representations made at the hearing in this matter, the Court finds that Reed Smith has made a sufficient showing that individualized responses to the subpoenas would be unduly burdensome. Thus, unless Defendants are able to demonstrate to this Court just cause for requiring additional individual responses to the subpoenas, Reed Smith's production, in addition to the productions that have already been made by non-parties, shall satisfy the discovery requests at issue.

### III. CONCLUSION

For the reasons set forth above, Defendants' Joint Motion to Compel Production of Documents from 21 Non-Parties is DENIED (ECF # 140), and the Motion for a Protective Order filed by Reed Smith is GRANTED (ECF # 144). In addition, the February 28 non-document Order granting Defendants' Motion to Compel against USWA is VACATED. To the extent it remains pending, the Motion to Compel against USWA is DENIED (ECF # 126).

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATE May 9, 2011